POLLY HOPPER, Appellant, *v.* CAVIL HOPPER *et al.,* Appellees.

APPEAL FROM GREENE.

Where a party, in a decree for divorce, stipulates to take, in lieu of one-third interest in certain land, for alimony, the sum of two hundred dollars, in case a certain claim shall be presented by and allowed to her husband, she will be estopped thereby from any proceeding, in relation to the land, to the prejudice of subsequent purchasers of it.

By decree of the Circuit Court of Greene, September term, 1853, the complainant was divorced from the said Cavil Hopper, for adultery, and, by consent of said Cavil, specified in decree for alimony, she was to have certain personal property, and he was to convey to her an equal undivided one-third part of 200 acres of land, so as to include dwelling-house and plantation then occupied by said Polly, at relative value to whole, with stipulation that his name might be used in legal proceedings to set aside deed of conveyance of said lands made by him 16th July, 1853, to Joshua Hopper, and to perfect title to undivided one-third of lands from the heirs of Joshua Hopper, deceased. If said Polly and Cavil could not agree as to partition of lands, —— to set off one-third of same by metes and bounds to her, according to quantity and quality. It was further stipulated

that if the said Cavil preferred a claim against the estate of the said Joshua for $600, the consideration of said deed, and interest, before the Probate Court of Greene county, and it was allowed, and one-third of it was paid to her, and she executed voucher to the administrator of the estate of said Joshua, that that was to operate as a bar to any claim to be set up by said Cavil, or any one claiming through him. It was further stipulated by consent that the said Polly was " to have the peaceable and undisturbed possession of the dwelling-house, and the plantation thereto adjoining and belonging, free from let, hindrance or molestation of the said Cavil Hopper or any one demanding by, through, or under him," and " that he is to execute deed aforesaid within twenty days from this date." That he died intestate in August, 1853, and that one Mitchell and defendant Ferguson were appointed his administrators, and that Mitchell had died. That complainant, since the rendition of the decree, had been in the open, notorious and undisputed possession of the lands referred to in the decree, and that she and the said Cavil had never agreed upon partition of lands, and that he had never made her any deed. That the heirs of said Joshua, with actual and constructive notice of premises, had instituted partition proceedings in said court, including said lands; and that same had been sold and conveyed by defendant Link, as master or commissioner — 80 acres to defendant Woodson, for $392, and 120 acres to defendant Drake, for $1,116, reserving lien by way of mortgage—said purchasers having express and constructive notice of her rights in the premises. Bill prays for process— that defendants answer on oath—and that decree for alimony be specifically executed, by appointing master in chancery of said county, and special commissioner or commissioners, to set off, allot, and convey to her one-third of said lands — or for such other relief as she might be entitled to in the premises, and prays that said purchasers, as they were volunteers, pay costs of suit.

Defendant Drake answered 25th August, 1856, admitting purchase of lands; says that they were sold as property of heirs of Joshua Hopper, deceased, and that he believed their title was perfect. Does not know anything of consideration as between Cavil and Joshua Hopper, except that $600 was consideration expressed in the deed, and says that said Cavil, after the death of said Joshua, presented claim against his estate for same, and that same had been fully paid by administrator. Knows nothing of consideration alleged in bill, and requires proof. Denies notice of decree, and insists if he had known it, he would have been entitled to the benefit of his purchase, because of said Cavil having prosecuted and collected said claim;

and says that that cut off the complainant from any share in the land. Admits that complainant had possession of said lands before and since decree, and insists that her possession since sale to Joshua Hopper has been wrongful. Insists that complainant, since decree, has taken no steps to obtain title to the land, and that her remedy, if any, is against said Cavil, and not against respondent. Denies any notice of claim of complainant to land, and says that on day of sale she made no objection, and asserted no claim, and that since purchase of respondent, complainant proposed to rent land of him, and virtually relinquished her supposed claim to land. Denies all other allegations of bill not admitted, and requires proof.

Replication to answer filed, and bill taken *pro confesso* as to defendants Ferguson, Hopper and Link.

Defendant Woodson answered in substance as did defendant Drake, except that Woodson denies that complainant had ever had possession of the tract of land bought by him.

Replication to answer filed.

James R. Spencer, James W. Brown, Stephen Hopper, Sidney Hopper and Nancy Mitchell, witnesses for complainant, proved that the consideration of the deed from Cavil to Joshua Hopper, in July, 1853, was to indemnify him as bail, and that complainant had been in open and notorious occupancy of lands in controversy since the fall of 1853. On cross-examination, Sidney Hopper proved that complainant was not present at sale of lands by Link, and that she said to defendant Drake, if she could not hold the land any other way, she would like to rent it.

John Armstrong, witness for complainant, testified that she was in possession of lands when sold by master; that Drake and Woodson were neighbors, and knew of her possession at and before the sale. On cross-examination, witness testified that that part of the land bought by Woodson was unimproved and unoccupied.

Defendant Ferguson, as witness for co-defendant Drake, testified that he (witness) was surviving administrator of the estate of Joshua Hopper, deceased. Knew land in controversy. Cavil Hopper never resided on it after he conveyed it to Joshua Hopper, but complainant resided on it before. On 7th of August, 1854, Cavil Hopper presented and proved, in the County Court of Greene, a claim against Joshua Hopper's estate for $600, on sale of land, which was allowed, and was paid by and receipted to Fielding Mitchell, one of the administrators of Joshua Hopper, on the 8th of August, 1854. Witness had no notice of the decree of divorce, and had no knowledge that Fielding Mitchell had. Was present at the sale of the lands by the master in Athensville. Does not know that complainant was present

when the land was bid off. Lands bought by Drake and Woodson same that Cavil conveyed to Joshua Hopper, and that were paid for as aforesaid, and that are in controversy in this case.

On the foregoing state of pleadings and proofs, complainant's bill was dismissed without prejudice.

The errors assigned are—

1st. That the court below dismissed bill of complainant.

2nd. That the court below did not grant the complainant the relief she asked, or any relief of any nature or kind.

D. A. SMITH, for Appellant.

STUART & EDWARDS, for Appellees.

CATON, C. J. That portion of the decree of divorce which provides alimony for the complainant, was, by the consent of both parties, and is, in terms, and in fact, a stipulation between them. The complainant, by her stipulations, as expressed in that decree, authorized Cavil Hopper to confirm and make absolute the deed which he had previously executed to Joshua Hopper, and which, but for such stipulation and subsequent confirmation, might have been avoided by the complainant. The stipulation referred to as contained in the decree, is thus: " It is further stipulated, by the consent of the said Cavil Hopper, that in the event that the said Cavil Hopper shall prefer a claim before the county judge, sitting as a Court of Probate, in and for said Greene county, against the estate of Joshua Hopper, deceased, for the consideration named in the deed of conveyance, made by him to said Joshua Hopper, above referred to, and the same shall be allowed, that one-third part of said consideration, to wit: two hundred dollars, the whole being six hundred dollars, as expressed in said deed, and that the said administrator of said Joshua Hopper, deceased, be authorized to pay said two hundred dollars, and the interest which may arise thereon, to the said Polly Hopper, or her heirs, executors, administrators, or assigns, and such payment shall be made a sufficient voucher for said administrator in the settlement of the said Joshua Hopper's estate, and operate as a bar to any claim to be set up by said Cavil Hopper or by any person claiming by, through, or under him." The reasonable and fair construction of this stipulation is, that Cavil Hopper might, if he should choose, present a claim for the consideration money mentioned in the deed, and if allowed by the Probate Court, against the estate of Joshua Hopper, the complainant should be entitled to receive one-third thereof, in lieu of the third interest in the land, which, by the previous provisions of the decree, had been awarded to her.

Such claim, being thus presented by her consent, and allowed, must necessarily estop her from attacking that deed afterwards. By consenting that such claim might be presented, in part for her benefit, made her a party to that proceeding, and must necessarily bind her by it. These subsequent purchasers had a right to consider that she thereby waived any objection which she might otherwise have to the deed, and that they might purchase the title thus confirmed, by her consent, with perfect confidence. Nor were they bound to see whether the administrator paid the third of the purchase money to her. Her right to it was secured by the decree, and if she did not follow up that right, and obtain it of the administrator, it was her own fault.

We think the Circuit Court decided correctly, in dismissing the bill, and its decree must be affirmed.

*Decree affirmed.*